UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KEVIN HOBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00063-TWP-KMB |
| | ) |
| AMERICAN COMMERCIAL BARGE LINE LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES**

Currently pending before the Court is a Motion to Compel Discovery Responses filed by Defendant American Commercial Barge Line LLC. [Dkt. 56.] For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. RELEVANT BACKGROUND

Plaintiff Kevin Hobbs initiated this action alleging that while he was working as a seaman on a vessel for Defendant American Commercial Barge Line LLC ("ACBL") in July 2020, he was seriously injured while carrying a 90- to 100-pound wire spool across barges. [Dkt. 1 at 2, ¶ 5.] Mr. Hobbs alleges that he "slipped and seriously injured his back, which required him to be transported off the vessel to shore, ending his work." [Dkt. 58 at 1.] ACBL denies that Mr. Hobbs was injured as alleged. [*See* dkt. 15.]

The present dispute involves Mr. Hobbs' objections to certain supplemental discovery requests—specifically, to Interrogatory Number 25 and Requests for Production Numbers 27 through 33 that ACBL served on Mr. Hobbs (the "Discovery Requests"). [Dkt. 56-1 at 3-4.] The Parties attempted to resolve this discovery dispute informally with each other and at a Discovery

Conference with the Court. [*See* dkts. 48; 54; 56-1 at 5-7.] When it did not resolve, ACBL was authorized to file the pending Motion to Compel. [Dkt. 56.]

## II. APPLICABLE STANDARD

"Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial." *Todd v. Ocwen Loan Servicing, Inc.*, 2020 WL 1328640, at *1 (S.D. Ind. Jan. 30, 2020) (citing 8 Wright & Miller, *Federal Practice and Procedure* § 2001, at 44-45 (2d ed. 1994)). Federal Rule of Civil Procedure 26(b)(1) outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." The scope of relevance for discovery purposes is broader than the scope of relevancy used for trial evidence. *West v. Wilco Life Ins. Co.*, 2023 WL 2917059, at *4 (S.D. Ind. Apr. 12, 2023) (citation omitted). Once relevancy has been established, "the burden shifts to the objecting party to show why a particular discovery request is improper." *Id.* at *3 (citing *Bell v. Pension Comm. of ATH Holding Co., LLC*, 330 F.R.D. 517, 520 (S.D. Ind. 2018)).

The Court's resolution of discovery disputes is guided by proportionality principles. Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality, like other concepts, requires a common sense and experiential assessment." *Todd*, 2020 WL 1328640, at *4. The Court has wide discretion in balancing these factors and

2

deciding the appropriate scope of proportional discovery. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating and Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 837 (7th Cir. 2014) (emphasizing that "a district court has broad discretion over pretrial discovery rulings").

### III. DISCUSSION

ACBL's Discovery Requests "seek information and documentation from [Mr. Hobbs] concerning the potential involvement of medical financing companies in this litigation and/or entities which may have a financial interest in the outcome of [Mr. Hobbs'] litigation." [Dkt. 56-1 at 3.] ACBL maintains it submitted these requests "in an effort to further investigate the claims asserted by [Mr. Hobbs] in this litigation, especially with respect to the reasonableness of [Mr. Hobbs'] alleged medical expenses." [*Id.*] ACBL represents that Mr. Hobbs has not substantively responded to the Discovery Requests, but instead provided the following objections: "Plaintiff objects as this request calls for information protected by the work product privilege and/or the attorney-client privilege. Plaintiff objects to this request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence,[1] and violative of the collateral source rule." [*Id.* at 1.] ACBL now seeks to compel Mr. Hobbs' response to the Discovery Requests, and it also asks for sanctions for his failure to respond. [Dkt. 56.] The Court will address those requests in turn.

---

[1] To the extent that Mr. Hobbs' objection is based on his assertion that the Discovery Requests are "not reasonably calculated to lead to the discovery of admissible evidence," that is an outdated understanding of Federal Rule of Civil Procedure 26. Because that language was expressly removed from Rule 26 when it was amended in 2015, the Court will not address it further.

3

### A. Discoverability of Medical Financing Information

ACBL argues that it has reason to believe that Mr. Hobbs has "engaged in medical financing agreements in relation to the subject litigation" because of hospital billing records providing a payment of $32,000.00 by a "funding company," as evidenced below:

| Procedure / journal description | ICD-10 DX1 | ICD-9 DX1 | Provider | Amount | Due |
|---|---|---|---|---|---|
| ARTHRODESIS, COMBINED POSTERIOR OR POS | M51.16 | | MOISHI | 271,410.45 | 239,410.45 |
| FUNDING COMPANY | | | MOISHI | 32,000.00 | 0.00 |

[*Id.* at 9.] ACBL asserts that discovery of information related to such arrangements is "necessary to assess the reasonableness of [Mr. Hobbs'] medical expenses" and to determine potential bias by Mr. Hobbs' treating physicians. [*Id.* at 9, 11.] With respect to Mr. Hobbs' asserted objections to the Discovery Requests, ACBL argues that the Discovery Requests do not violate the collateral source rule because that is an evidentiary rule, not a rule limiting discovery, and that Indiana courts interpreting that rule have held that evidence of a plaintiff's medical billing arrangements may be admissible. [*Id.* at 13-18 (citing *Stanley v. Walker*, 906 N.E.2d 852, 853 (Ind. 2009)).] ACBL goes on to argue that any objection to the Discovery Requests based on attorney-client privilege or the work product doctrine is meritless not only because Mr. Hobbs failed to provide a privilege log, but he also has not made a showing that any of the documentation or information sought is subject to such privileges. [*Id.* at 18-22.] Finally, ACBL argues that Mr. Hobbs has failed to make the required specified showing that the Discovery Requests are unduly burdensome. [*Id.* at 22-23.]

In a relatively brief response, Mr. Hobbs confirms that he "has entered into pre-settlement litigation loans, in order to stay afloat and pay for necessities and some of his medical treatment." [Dkt. 58 at 3.] He asserts, however, that he is not in possession of certain documents that ACBL seeks, namely, "any documents reflecting any agreement between [Mr. Hobbs] and any 'medical

financing entities,' including liens, letters of protection, or letters of guarantee." [Dkt. 58 at 3.] Mr. Hobbs argues that ACBL has failed to satisfy its burden of proving that the documents and information they seek relating to third party litigation loans or a third party's financial interest are relevant to the underlying litigation. [*Id.* at 3-4.] Mr. Hobbs' response brief does not specifically address any of the objections he made directly in response to the Discovery Requests regarding the collateral source rule, the attorney-client privilege, or the work product doctrine, nor does he assert that the Discovery Requests are overly broad or unduly burdensome.

In reply, ACBL first highlights that though Mr. Hobbs initially "objected to ACBL's [Discovery Requests] for a litany of reasons, citing the work product privilege, the attorney-client privilege, and the collateral source rule, further claiming that the discovery sought by ACBL is unduly burdensome," he "seemingly abandons these objections" in response to ACBL's Motion and "fails to address any of the arguments raised by ACBL on these issues." [Dkt. 59 at 2.] ACBL disagrees with Mr. Hobbs' substantive argument, arguing that the information and documentation sought by the Discovery Requests is relevant and noting that it is challenging both the reasonableness of Mr. Hobbs' medical treatment and the credibility of his treating physicians. [*Id.*]

The discoverability of healthcare financing or litigation funding agreements in federal court is an unsettled area of law that has not been directly decided by the Seventh Circuit Court of Appeals. Caselaw from other jurisdictions, however, generally supports the principle that healthcare financing agreements may be relevant to the question of damages or the value of medical services provided and, thus, should be discoverable. *See Spears v. Wal-Mart Stores E., LP*, 2020 WL 12676397, at *8-9 (S.D. Ga. Sept. 21, 2020) (holding that information regarding medical financing was "potentially relevant to the issue of the reasonableness of [the plaintiff's] medical expenses, and, therefore, [was] discoverable"); *Ortiviz v. Follin*, 2017 WL 3085515, at *5

5

(D. Colo. July 20, 2017) (the amount paid "is relevant to [the plaintiff's] claim for damages and [the defendants'] rebuttal of the reasonable value of those damages"); *Bramlett v. YRC, Inc.*, 2017 WL 3000042, at *1 (N.D. Ga. Jan. 24, 2017) (evidence regarding litigation funding is "relevant for the jury to consider in determining the reasonable value of medical services provided" (citation omitted)). With respect to litigation funding more generally, courts are split as to whether and to what extent that discovery should be permitted. *See In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 614 (D.N.J. 2019) ("At bottom, courts are split on the issue and plaintiffs and defendants can each cite to cases supporting their positions.").

A party seeking to avoid disclosure on the basis of attorney-client privilege or the work product doctrine "bears the burden of establishing the existence of the privilege, and any doubts about the applicability of the privilege must be resolved in favor of disclosure." *Rockies Express Pipeline LLC v. 58.6 Acres*, 2009 WL 5219025, at *2 (S.D. Ind. Dec. 31, 2009). A party may waive privilege when it fails to produce an adequate privilege log. *United States v. Cmty. Health Network, Inc.*, 2023 WL 3151847, at *8 (S.D. Ind. Apr. 28, 2023). Further, when a party resists discovery on the basis of undue burden, it "must show with specificity that the discovery requests [at] issue are objectionable," which "typically requires affidavits or other evidence supporting a party's assertions of burden." *United States ex rel. Robinson v. Ind. Univ. Health Inc.*, 2015 WL 3961221, at *5 (S.D. Ind. June 30, 2015).

A party may be found to have waived any argument that it failed to adequately address when responding to a motion to compel. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Ind. MHC, LP v. Harrison Cnty. Reg'l Sewer Dist.*, 2023 WL 2301742, at *3 (S.D. Ind. Feb. 28, 2023) ("A party waives its

6

objections to discovery requests and corresponding motions to compel when it fails to respond to the same."); *Griffith v. Brannick*, 2018 WL 4539262, at *2 (S.D. Ind. Sept. 20, 2018) ("Defendants failed to file a response in opposition to Plaintiff's motion, thereby waiving any arguments in response to Plaintiff's motion.").

Mr. Hobbs' brief response, which spans only a few pages, focuses solely on the disputed relevance of the documentation and information sought by the Discovery Requests.  [*See* dkt. 58.] In other words, Mr. Hobbs' response brief neither specifically addresses any of the objections he previously made in response to ACBL's Discovery Requests about the collateral source rule, the attorney-client privilege, or the work product doctrine, nor does he assert that the Discovery Requests are overly broad or unduly burdensome.  He also does not dispute ACBL's assertion that he did not produce a privilege log of any kind.  For these reasons, the Court finds that Mr. Hobbs has waived any earlier-raised objections, including those based on the collateral source rule,[2] attorney-client privilege, the work product doctrine, or undue burden.  *Bonte*, 624 F.3d at 466.

Given this waiver, the only issue left for the Court to address is whether the information and documentation sought by the Discovery Requests is relevant.  "Relevance, particularly in the discovery phase, is a low bar to meet." *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 WL 2974083, at *4 (N.D. Ill. Apr. 17, 2023).  Mr. Hobbs admits in his response brief that he has "entered into pre-settlement litigation loans, in order to stay afloat and

---

[2] The Court agrees with ACBL that the collateral source rule is an evidentiary rule and does not govern discoverability of the information. *See Elite Performance LLC v. Echelon Prop. & Cas. Ins. Co.*, 2022 WL 4113403, at *3 (D. Ariz. Aug. 12, 2022) ("[T]he collateral source rule operates to exclude evidence at trial, not to limit pre-trial discovery. . . . [A party] is welcome to challenge the admissibility of this evidence once the discovery phase is concluded, but it may not simply refuse to cooperate with a discovery request on the grounds that the evidence may eventually be deemed inadmissible.").  Thus, any objection Mr. Hobbs has to the admissibility of evidence based on the collateral source rule can be appropriately raised at later stages of this litigation.

pay for necessities and some of his medical treatment." [Dkt. 58 at 3.]  ACBL also points to a hospital bill that attributes a $32,000.00 payment to a "funding company."  [Dkt. 56-1 at 9.] Information sought by the Discovery Requests is relevant to the question of whether Mr. Hobbs' medical expenses were reasonable, which ACBL has represented is disputed by the Parties.  [*See* dkt. 59 at 3.]  Evidence related to the actual value of Mr. Hobbs' injuries is relevant not only as the Parties prepare for trial but also to explore settlement possibilities.[3]  For these reasons, the Court concludes that Mr. Hobbs must be compelled to produce the discovery sought by the Discovery Requests.  The Court stresses, however, that whether the information received by ACBL will be admissible is a question for another day.

      The Court emphasizes that whether to allow certain discovery requests is often a very fact-specific determination.  *See Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006). Here, Mr. Hobbs admitted that he took out loans to pay for "some of his medical treatment," and the Court has concluded that he has waived most of his earlier-raised objections to that discovery. Had Mr. Hobbs adequately raised those objections in response to ACBL's Motion to Compel or

---

[3] Some jurisdictions have also found such evidence to be relevant to the potential bias of a party's treating physicians.  *See, e.g.*, *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1301-04 (11th Cir. 2018); *Thomas v. Chambers*, 2019 WL 8888169, at *4 (E.D. La. Apr. 26, 2019).  Courts that have done so have reasoned that if an arrangement exists such that a healthcare financing company is referring patients to certain physicians, those physicians would be incentivized to give more favorable testimony on behalf of those patients.  *ML Healthcare Servs.*, 881 F.3d at 1301-04.  Other courts have found that such arrangements "may incentivize participating healthcare providers to provide services to plaintiffs they would not otherwise render, or at higher costs than they would otherwise charge."  *Spears v. Wal-Mart Stores E., LP*, 2020 WL 12676397, at *7 (S.D. Ga. Sept. 21, 2020).  This Court declines to follow that rationale in this case because ACBL has only set forth mere speculation of physician bias.  Given that physicians who provide unnecessary medical services to their patients could be committing healthcare fraud or risking a medical malpractice action, the Court does not believe that bias should be inferred based on mere speculation alone.

had he proposed narrower grounds for production, the Court may have agreed with him. But he did not, so the Court cannot.

In summary, while the Court ultimately grants ACBL's request to the extent that it will compel the requested discovery, it emphasizes that this ruling should not be read to support a blanket conclusion that discovery related to medical financing or litigation funding will always be relevant or discoverable. There may be meritorious objections that a party could make to similar requests in other cases, but Mr. Hobbs did not make them here. For these reasons, the Court grants ACBL's request to compel responses to the Discovery Requests.

### B. Sanctions

ACBL summarily requests that Mr. Hobbs be ordered to reimburse it for its attorneys' fees incurred in preparing and filing this Motion. [Dkt. 56-1 at 23.] When a court grants a party's motion to compel, it ordinarily "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court must not order this payment if certain conditions are met, including when "the opposing party's nondisclosure, response, or objection was substantially justified," or if there are "circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). Such circumstances may include when the law governing the relevant motion is unsettled. *See Doe v. Purdue Univ.*, 2021 WL 84531, at *10 (N.D. Ind. Jan. 11, 2021).

The Court does not find that it is appropriate to award ACBL the fees associated with its filing of the Motion to Compel under the circumstances presented herein. As earlier discussed, whether information and documentation related to medical financing or litigation funding is

discoverable is a developing area of law and not yet settled. As such, Mr. Hobbs' objections to the Discovery Requests were not unfounded or meritless, and the Court concludes that sanctioning him is not warranted.

## IV. CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Compel Discovery Responses. [Dkt. 56.] The Motion is **GRANTED** to the extent that Mr. Hobbs shall provide full and complete responses to the Discovery Requests **no later than October 18, 2023.** The Motion is **DENIED** insofar as the Court declines to grant ACBL's request for attorneys' fees.

**SO ORDERED.**

Date: 9/26/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Danica B. Denny
Frilot LLC
ddenny@frilot.com

Abigale Rhodes Green
GROSSMAN GREEN PLLC
agreen@grossmangreen.com

H. Philip Grossman
GROSSMAN GREEN PLLC
pgrossman@grossmangreen.com

Phoebe A. Hathorn
FRILOT, LLC
phathorn@frilot.com

Patrick J. McShane
FRILOT, LLC

pmcshane@frilot.com

Denman Thomas Mims
Frilot
dmims@frilot.com

Kathleen Pontier Rice
FRILOT, LLC
krice@frilot.com

Trenton Anderson Shelton
Arnold & Itkin LLP
tshelton@arnolditkin.com