UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KEVIN HOBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00063-TWP-KMB |
| | ) |
| AMERICAN COMMERCIAL BARGE LINE LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendant American Commercial Barge Line, LLC's ("ACBL") Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 (Filing No. 40). Plaintiff Kevin Hobbs ("Hobbs") initiated this action against ACBL alleging violation of the Jones Act, 46 U.S.C. § 30104, *formerly* 46 U.S.C. § 688(a), and general maritime law for negligence, unseaworthiness, and maintenance and cure. ACBL seeks judgment as a matter of law on Hobbs' claim for maintenance and cure and his claim for punitive damages in relation to the claim for maintenance and cure. For the reasons explained below, the Motion is **denied in part and granted in part**.

**I.    BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Hobbs as the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

ACBL provides barge transportation throughout the inland waters of the United States (Filing No. 40-10 at 1). On July 26, 2018, Hobbs applied to work as an experienced deckhand (Filing

No. 45-2 at 2), and ACBL offered him conditional employment on August 16, 2018 (Filing No. 40-10 at 1). The deckhand position is classified as having a physical demand of "Very Heavy," and ACBL requires that all applicants submit to a pre-employment physical. *Id.* at 1, 25.

As Hobbs underwent a pre-employment physical and fitness for duty assessment, *id.* at 2, he provided his medical history on a form supplied by an assessment provider and on a U.S. Coast Guard Application for Merchant Mariner Medical Certificate. *Id.* at 49, 63–70. Despite being evaluated at Jackson Purchase Medical Center in both April and June 2017 for back pain (Filing No. 40-6 at 70, 91, 103), Hobbs circled "N" on the provider form when asked about previous back, neck or head injuries (Filing No. 40-10 at 49). He indicated on the medical certificate application that, to the best of his knowledge, he had never had, required treatment for, or presently had back pain, joint problems, or orthopedic surgery. *Id.* at 66. During the physical capacity portion of the assessment, Hobbs successfully demonstrated a capability to perform the functions of an ACBL deckhand (Filing No. 45-4 at 3), and he subsequently began employment.

While the vessel was located on navigable waters in the City of St. Louis, Missouri, and while Hobbs was contributing to and aiding the vessel accomplish its mission, he was seriously injured while carrying a 90–100-pound wire spool across barges to make tow. (Filing No. 1 at 2 ¶ 5.) The accident occurred while he was aboard the M/V Bob Stith (Filing No. 45-5 at 32), which, according to the crew dispatch log, was a stint lasting from April 10, 2019, until May 1, 2019 (Filing No. 46-1 at 3).[1] On or about April 28, 2019, or "three days before [he] got off the boat," Hobbs

---

[1] Hobbs has been inconsistent on when and where he was injured. In his Complaint, Hobbs alleges "[o]n or about July 3, 2020, Plaintiff was employed by ACBL as a seaman, and was working on ACBL's vessel" when he was seriously injured" (Filing No. 1 at 2). In his deposition, Hobbs testified"[t]he accident did not happen July the 3rd," and instead "July 3rd" was the date on which he, no longer able to complete his duties, left the W.T. Toutant and was seen by a doctor (Filing No. 45-5 at 32). Then, at one point in his deposition Hobbs answered "Yes, sir" when asked, "Late May 2020, is that your claim?" (Filing No. 45-5 at 22), he later indicated "BOB STIFF [sic]" when asked what vessel he worked on when the accident happened, *id.* at 32, a contention which he maintained throughout the remainder of the deposition. *See id.* at 33–35, 39, 43. Regardless, the above facts are considered in the light most favorable to Hobbs.

picked up a wire on the M/V Bob Stith that weighed "like[] a hundred or so pounds," placed it on his left shoulder, and walked to a step, where he slipped "because there was no nonskid" (Filing No. 45-5 at 32, 34). The wire landed on his side, causing pain to his lower back and leg and a burning sensation to shoot down his whole leg. Following the incident, Captain Michael Sanders indicated by email message that he was preventing Hobbs from heavy lifting for a few days "to let his back recover" and noted that it "[did] not appear to be an incident so much as just a 'hurt'" (Filing No. 45-8 at 2; Filing No. 40-7 at 13). Hobbs left the ship on May 1, 2019, and did not return to the M/V Bob Stith again during his employment, *see* Filing No. 46-1 at 1, 3. He boarded the W.T. Toutant vessel on June 5, 2019, and disembarked on July 3, 2019 (Filing No. 46-1 at 3).

On March 1, 2020, Hobbs presented at Camden General Hospital Emergency Department with burning lower extremity pain and lateral numbness to half of his left thigh, with an onset of a week prior, and he was diagnosed with left-sided lumbago with sciatica (Filing No. 40-6 at 8–9, 27). He returned on March 16, 2020, complaining of left-sided numbness and tingling, an abrupt onset of thoracic pain and lumbar pain, and radiating pain from a left lower extremity. *Id.* at 31, 41. In the history of the present illness section, the March 16, 2020 medical record states that the "location where the incident occurred was at home." *Id.* at 41. Hobbs received a prescription for Tramadol on March 1, 2020 and for Acetaminophen-Hydrocodone and Methocarbamol on March 16, 2020. *Id.* at 18, 40.

On or about July 3, 2020, while aboard the vessel W.T. Toutant, Hobbs was assigned to work with Captain Michael Sanders ("Captain Sanders") and Senior Leadman Paul Martindale. Hobbs reported that he could no longer complete his duties as a deckhand (Filing 45-5 at 32).[2] Hobbs

---

[2] In his Local Rule 56-1(b) submission of disputed material facts, Hobbs indicates that "July 3, 2020, was the date that [his] injuries exceed[ed] his ability to work" (Filing No. 45-1 at 1).

informed Captain Sanders that he did not get hurt on the WT Toutant, rather it was a preexisting ongoing condition for which Hobbs had been to the doctor several times. (Filing No.40-7 at 12.). Captain Sanders filled out a report indicating an "overexertion" injury event, describing the event as "on-going lower back issues [] pre-existing," and further clarifying that Hobbs's "lower back became more painful" with his "left leg numb" and that there was "no specific event or incident" (Filing No. 45-9 at 2).

On July 22, 2020, Hobbs' treating physician, Dr. William Carney, completed a Certification of Health Care Provider for Employee's Serious Health Condition, wherein he indicated the approximate date that Hobbs' condition commenced was the last week of February 2020 and he was treated in March 2020 for the condition (Filing No. 40-9 at 6–9).

On November 29, 2022, Dr. J. Michael Graham conducted a medical evaluation of Hobbs, which included an interview, physical examination, and review of medical records and imaging. (Filing No. 40-6 at 1.) He provided a report discussing his opinions about the medical issues regarding the orthopedic injuries claimed by Hobbs "as a consequence of a work[-]related incident which reportedly occurred on July 3, 2020." *Id.* at 132.

## II.     SUMMARY JUDGMENT LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). That is, summary judgment is appropriate if, on the evidence

4

provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. 317, 322 (1986); *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.   DISCUSSION

On April 29, 2022, Hobbs, initiated this action asserting three counts in his Complaint: Count 1: negligence under the Jones Act, Count II: unseaworthiness under general maritime law, and Count III: maintenance and cure under general maritime law. ACBL seeks partial summary judgment on Count III, arguing Hobbs is not entitled to maintenance and cure because Hobbs intentionally concealed his significant pre-existing back pain and back injuries. They also seek summary judgment on Hobbs' claim for punitive damages.

#### A.   The Maintenance and Cure Claim

The jurisdictional statement in Hobbs' Complaint invokes diversity jurisdiction, but not admiralty law pursuant to Federal Rule of Civil Procedure 9(h). Nevertheless, regardless of whether a maritime tort claim is brought on the admiralty or the law side of a federal district court, the parties' rights and liabilities are controlled by federal principles of maritime law if the case arises from conduct that brings it within reach of the Court's admiralty jurisdiction. *See Lambert v. Babcock & Wilcox, Co.*, 70 F. Supp. 2d 877, 883 (S.D. Ind. 1999) (citing *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988)); *Bodnar v. Hi-Lex Corp.*, 919 F.Supp. 1234, 1237 (N.D. Ind. 1996) (collecting cases); *Quirin v. Lorillard Tobacco Co.*, 17 F.Supp.3d 760, 766–767 (N.D. Ill. 2014) ("The fact that the case is before this court pursuant to diversity rather than admiralty jurisdiction, however, 'does not preclude the application of maritime law.'"). Here, the applicable law is federal

maritime law. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959) ("[Plaintiff] was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law."). *See also Fed. Ins. Co. v. Speedboat Racing Ltd.*, 200 F.Supp.3d 312, 336 (D. Conn. 2016); *Lambert*, 70 F. Supp. 2d at 886.

Generally, a "shipowner is obligated to provide maintenance and cure for sick or injured members of the crew." *Bennett v. Grand Victoria Resort & Casino*, No. NA 00-62-C H/H, 2002 WL 440235, at *2 (S.D. Ind. Mar. 7, 2002). Cure is the payment of medical expenses incurred in treating the seaman's injury or illness, and maintenance is the payment by a shipowner for the seaman's food and lodging expenses incurred while he is ashore as a result of illness or accident. *Id.* (citing *Clifford v. Mt. Vernon Barge Service, Inc.*, 127 F.Supp.2d 1055, 1057 (S.D. Ind. 1999)). *See also Mullen v. Fitz Simons & Connell Dredge & Dock Co.*, 191 F.2d 82, 85 (7th Cir. 1951). Liability for maintenance and cure "extends during the period when [the seaman] is incapacitated until he reaches the maximum medical recovery." *Vaughan*, 369 U.S. at 531. *See also Vella v. Ford Motor Co.*, 421 U.S. 1, 5–6 (1975). A seaman's right to maintenance and cure is to be construed liberally, with all doubts to be resolved in favor of the seaman. *Vaughan*, 369 U.S. at 532 (citing *Warren v. United States*, 340 U.S. 523 (1951)). Correspondingly, a shipowner's duty to provide maintenance and cure is meant to "assure its easy and ready administration, for it has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Vella*, 421 U.S. at 4.

Although the doctrine is broad, most of the Circuits recognize some type of affirmative defense to a maintenance and cure claim when the seaman intentionally misrepresented or concealed material medical facts. Often called the *McCorpen* defense, this exception has taken slightly

different forms in different circuits, but generally derives from the principle that compensation "will be denied where [a seaman] knowingly or fraudulently conceals his [preexisting] illness from the shipowner." *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968), *cert. denied*, 89 S.Ct. 223 (1968). In cases involving a pre-existing illness or other disability, courts have made a distinction between non-disclosure and concealment. *Id.* Where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. *Id.* at 548–549. If the shipowner is unable to persuade the court or jury that the seaman could reasonably be expected to have considered his medical history a matter of importance, he would be liable for maintenance and cure. *See id.* at 549. Liability exists for the shipowner "if it is found that there existed reasonable grounds for the seaman's good-faith belief that he was fit for duty." *Id.* See *Burkert v. Weyerhaeuser S.S. Co.*, 350 F.2d 826 (9th Cir. 1965); *Couts v. Erickson*, 241 F.2d 499, 502–503 (5th Cir. 1957); *Lindequist v. Dilkes*, 127 F.2d 21, 22–24 (3d Cir. 1942); *Ahmed v. United States*, 177 F.2d 898, 900 (2d Cir. 1949).

Courts disagree on the scope of the defense in circumstances where, like here, a seaman is required to submit to a pre-hiring medical examination or interview and the seaman misrepresents or conceals material medical facts. The Fifth Circuit, among others, finds a seaman is not entitled to maintenance and cure, as ACBL correctly points out, if "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury" for which maintenance and cure is sought. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (quoting *McCorpen*, 396 F.2d at 548–549). See *West v. Midland Enters., Inc.*, 227 F.3d 613, 617 (6th Cir. 2000); *Wactor v. Spartan Transp. Corp.*,

7

27 F.3d 347, 352 (8th Cir. 1994); *Siders v. Ohio River Co.*, 469 F.2d 1093, 1093 (3d Cir. 1972) (per curiam) (citing *McCorpen*), *aff'g* 351 F.Supp. 987 (W.D. Pa. 1971); *Vitcovich v. Ocean Rover O.N.*, 106 F.3d 411 (9th Cir. 1997) (unpublished) (citing *Tawada v. United States*, 162 F.2d 615 (9th Cir. 1947)); *Jackson v. NCL America, LLC*, 730 F. App'x 786, 789 (11th Cir. 2018) (per curiam). In these courts, the examination is an "essentially objective inquiry," *Brown*, 410 F.3d at 174, meaning it is "less reliant on determinations of a seaman's credibility, than other Circuits' comparable tests." *Id.* at 175. A "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement." *Id.* at 174 (quoting *Vitcovich*, 106 F.3d 411).

Other courts, particularly in the Second Circuit, have chosen against *McCorpen*'s objective inquiry in favor of a more subjective rule that also considers a seaman's good faith. Under this approach, "[c]oncealment of a previous condition is fraudulent only if the seaman knows or reasonably should know that the concealed condition is relevant," even if the employer conducts a medical examination. *Sammon v. Cent. Gulf S.S. Corp.*, 442 F.2d 1028, 1029 (2d Cir. 1971).

Although the Seventh Circuit has not explicitly adopted or declined to adopt *McCorpen*, nor expressly selected a subjective or objective gloss to apply to the affirmative defense to maintenance and cure outlined therein, it did articulate an applicable standard ten years ahead of the Fifth Circuit's seminal decision. Namely, in *Sulentich v. Interlake S.S. Co.*, the Seventh Circuit upheld jury instructions requiring the defendant to prove by a preponderance of the evidence that the plaintiff: (1) knowingly misrepresented to or concealed from the examining physician the facts concerning his previous back injuries; (2) the misrepresentation or concealment was material; (3) the misrepresentation or concealment was relied upon by the defendant; and (4) the plaintiff would not have been permitted to continue to work and remain aboard the vessel if the true facts had been

disclosed. *See* 257 F.2d 316, 320 (7th Cir. 1958), *cert. denied*, 358 U.S. 885 (1958); *see also Smith v. Apex Towing Co.*, 949 F. Supp. 667, 671 (N.D. Ill. 1997) (applying *Sulentich*).

From this background, the Court now addresses whether the elements that make up an affirmative defense based on deliberate concealment are met here.  It is undisputed that Hobbs provided to ACBL at least some incorrect answers concerning his medical history prior to the position being offered.  For example, he indicated on the medical certificate application that he had never had back pain, despite having been evaluated for back pain in 2017 at Jackson Purchase Medical Center on three separate dates in relation to a fall and a subsequent vehicular accident.

ACBL asserts it is likewise undisputed that Hobbs concealed a "pre-existing back condition" (Filing No. 40-1 at 14), that the concealed medical history was material to ACBL's hiring decision, and that a connection exists between the pre-existing condition and the injuries complained of in the suit. As evidence of the undisclosed pre-existing condition, ACBL cites the Jackson Purchase medical evaluations, as well as the results of a diagnostic CT imaging scan from Hobbs' April 16, 2017 visit that finds slight annular disc bulging in L2–L3 and mild annual disc bulging without thecal sac compression or neuroforaminal narrowing in L4–L5 and L5–S1 (Filing No. 40-1 at 6–7, 16; Filing No. 40-6 at 98).  ACBL also points to a notation in the medical record from the June 7, 2017 visit that states the patient, Hobbs, "complains of back pain for [] 10 years" (Filing No. 40-1 at 16, Filing No. 40-6 at 103).

In contrast, Hobbs responds that ACBL has failed to carry its burden for the affirmative defense.  First, Hobbs asserts a question of fact remains as to whether there was intentional concealment and argues that the incidents involving his back in 2017 were not injuries requiring treatment beyond the medical evaluations he sought precautionarily; namely, his trip "to the hospital in the wreck" "turned out to be nothing," and the hospital tests from the ditch incident "checked out"

9

with "nothing wrong". (Filing No. 45 at 6–7, 8, quoting Filing No. 45-5 at 22, 17)).) He maintains his CT scan indicated he had no injury,[3] and he never participated in physical therapy, received injections, or underwent surgery. Hobbs denies telling providers at Jackson Purchase Medical Center that he had experienced chronic lower back pain for ten years because "he would have been 10 years old at the onset and wasn't possible [sic]" (Filing No. 45-1 at 2). Second, Hobbs asserts that ACBL would have still hired him even had it known about his back pain. He argues ACBL does not explain why back pain would prevent it from hiring Hobbs after his passage of the pre-employment physical test clearing him for full duty work, and points to his subsequent work as a deckhand without incident, medical attention, or complaint of back pain. Finally, Hobbs asserts ACBL fails to demonstrate that his current injuries were in any way related to the previous injuries. He argues that ACBL points to injuries to the same general part of the body, which differs from proving that the new injuries are manifestations or aggravations of the old injury.

      Admittedly it is a close call, but the Court concludes that Hobbs' assertions create a genuine issue of material fact. ACBL's statement of undisputed material facts does not establish that ACBL would not have chosen to hire Hobbs had it known of his prior back condition. Rather, ACBL states only that it expects applicants' accurate and full report of medical history "so that it can *decide whether to hire* that person to perform the work required of them" (Filing No. 40-2 at 2 (emphasis added)). It states secondly that, had Hobbs disclosed his prior back condition, "this information would have been material to [its] decision to hire [him]." *Id.* at 3. And it states thirdly that, had Hobbs disclosed his prior back condition, "ACBL would have *inquired further* to determine [his] employability." *Id.* (emphasis added). All three statements, which stop short of evidencing that ACBL *would choose against* hiring Hobbs, establish only that ACBL would have subsequently

---

[3] After listing its findings, the CT scan states: "IMPRESSION: No significant abnormality" (Filing No. 40-6 at 98).

10

further investigated Hobbs' back condition. A question of fact remains as to whether it would have chosen to then hire him as it indeed had.

The declaration of the human resources manager on which ACBL's statement is based contains similar contentions. First, she contends that ACBL considers important that applicants fully and accurately describe their medical history when applying to work as a deckhand "[c]onsidering the physically-strenuous nature of the work expected of a deckhand" (Filing No. 40-10 at 3). Next, she contends ACBL decided to hire him "[r]elying on the information provided by [him] in his medical condition questionnaire, medical history form, and pre-employment physical." *Id*. Lastly, she contends ACBL calculated that the three sources of pre-employment information would ascertain the existence of "any medical condition that might impact [] Hobbs' ability to perform his duties as a deckhand." *Id*. Again, a question of fact remains as to whether ACBL would have permitted Hobbs to work had it known the information they claim he concealed.

ACBL relies on *Brown*, 410 F.3d at 175, for the proposition that the information is material if the employer asks a specific medical question on the application and that inquiry is rationally related to the applicant's physical ability to perform the job duties. The *Brown* court, like ACBL's argument, followed the defense articulated in *McCorpen*, which does not require that the shipowner demonstrate that the seaman would not have been employed if the requested disclosure had been made. *See also Atlantic Sounding Co., Inc. v. Petrey*, 402 Fed. Appx. 939, 941–942 (5th Cir. 2010) (unpublished) (rejecting the argument that the *McCorpen* defense includes a fourth element separately requiring demonstration that the vessel owner would not have employed the seaman if the disclosure had been made but noting that, instead, the owner must show the non-disclosed facts were material to the company's decision to hire him).

11

It appears that the Seventh Circuit requires that a defendant demonstrate the plaintiff would not have been hired or remained employed had the information been known. *See Sulentich*, 257 F.2d at 320 (examining physician testified that, had the plaintiff disclosed back problems, he would have been immediately terminated and removed from the ship); *see also Smith*, 949 F.Supp. at 672 (N.D. Ill. 1987) (examining physician testified that he would have performed a more complete examination and recommended limitations had he known the information, and defendant's dispatcher indicated based on physician's testimony she would not have hired the plaintiff had the information been disclosed). In this case, ACBL has not made such a demonstration, and questions of fact remain as to whether it would have permitted Hobbs to work, continue to work, or remain aboard the vessel had the disclosures that it seeks been made. Hobbs' declarations and the evidence provided, taken in the light most favorable to Hobbs shows that a genuine issue of material fact remains. Accordingly, summary judgment is denied on this claim.

**B. Punitive Damages Claim**

Under United States maritime law, a plaintiff is only entitled to punitive damages when a defendant withholds maintenance and cure in a "willful and wanton" manner. *Townsend*, 557 U.S. at 424; *see also Beam v. Watco Transloading, LLC,* No. 18-CV-2018-SMY, 2020 WL 7388955, at *3 (S.D. Ill. Dec. 16, 2020) (citing *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984)); *Richoux v. Jefferson Marine Towing, Inc., No. CIV.A*. 13-375, 2014 WL 47335, at *2 (E.D. La. Jan. 6, 2014) (explaining an employer may be liable for punitive damages when it rejects a proper claim for maintenance and cure in a manner that is "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent.") ACBL points out,

> A defendant does not act "wantonly" when the defendant had a reasonable, good-faith basis to believe that the employee was not entitled to maintenance and cure. This is known as the "reasonable and good-faith" defense. To successfully assert this defense, the defendant must demonstrate that they had an objectively reasonable basis for believing that the employee was not entitled to maintenance and cure payments.[76]

> Moreover, to defeat the defense, a plaintiff must affirmatively make a showing of bad faith on the part of the defendant. *Ward v. EHW Constructors*, No. C15-5338 BHS, 2016 WL 7407226, at *5 (W.D. Wash. Dec. 22, 2016) (citing *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984)) ("[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith.")

(Filing No. 40-1 at 23).

ACBL asserts that it acted in good faith and in reliance on Hobbs's own treating physicians and medical records in evaluating his claim and determining he was not entitled to maintenance and cure. In support of its good faith argument, ACBL points to the designated evidence including: the accident report filled out by Captain Sanders; deposition testimony of Captain Sanders and the leadman of the W.T. Toutant; Dr. Carney's indications in July 2020 that the approximate commencement date for Hobbs's condition was in February and that Hobbs was seen in March 2020 for the condition; and the Camden General Hospital records' indications of prescriptions and that the condition and onset of symptoms occurred at home. It also points to the nondisclosed information relating Hobbs's back pain, discussed above, and the independent medical examination of Dr. Graham.

Hobbs does not respond to this argument, and he designates no evidence to support his punitive damages claim. Hobbs merely asks the Court to deny the motion for partial summary judgment and states in passing that, given the evidence and the fact that maintenance and cure is a continuing obligation, he should be able to pursue punitive damages at trial. (Filing No. 45 at 2). When a party fails to respond to an issue raised in a summary judgment motion, the issue is deemed abandoned and waived. *See, e.g., Palmer v. Marion Cnty.,* 327 F.3d 588, 597–98 (7th Cir.2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Thurman v. Village of Homewood,* 446 F.3d 682, 687 (7th Cir.2006) (affirming district court's decision to grant summary judgment when the opposing party failed to provide the court with

13

evidence); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 320 (1986) (noting "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Hobbs has presented no evidence upon which a reasonable jury could find that ACBL's decision was callous and recalcitrant, arbitrary, and capricious, or willful, and persistent. And the Court is not required to scour the record looking for it. As the Seventh Circuit has often stated, "summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)). Because Hobbs has failed to designate any evidence in support of this claim, summary judgment is **granted** on the punitive damages claim.

### IV.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Partial Summary Judgment (Filing No. 40) is **DENIED in part and GRANTED in part.** Summary judgment is **denied** as to Count III: Maintenance and Cure, and this claim may proceed. Summary judgment is **granted** as to the claim for punitive damages, and this claim is **dismissed with prejudice**.

SO ORDERED.

Date: 11/21/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Abigale Rhodes Green
GROSSMAN GREEN PLLC
agreen@grossmangreen.com

H. Philip Grossman
GROSSMAN GREEN PLLC
pgrossman@grossmangreen.com

Trenton Anderson Shelton
ARNOLD & ITKIN LLP
tshelton@arnolditkin.com

Danica B. Denny
FRILOT LLC
ddenny@frilot.com

Denman Thomas Mims
FRILOT, LLC
dmims@frilot.com

Kathleen Pontier Rice
FRILOT, LLC
krice@frilot.com

Patrick J. McShane
FRILOT, LLC
pmcshane@frilot.com

Phoebe A. Hathorn
FRILOT, LLC
phathorn@frilot.com